# NO. 12-18-00056-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *THE STATE OF TEXAS FOR* | *§* | *APPEAL FROM THE* |
| *THE BEST INTEREST AND* | *§* | *COUNTY COURT AT LAW* |
| *PROTECTION OF C.L.* | *§* | *CHEROKEE COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

C.L. appeals from an order authorizing the Texas Department of State Health Services (the Department) to administer psychoactive medication-forensic. In one issue, he challenges the legal and factual sufficiency of the evidence to support the trial court's finding that administration of psychoactive medications was in his best interest. We affirm.

## BACKGROUND

On March 8, 2018, Robert Lee, M.D. signed an application for an order to administer psychoactive medication-forensic to C.L. In the application, Lee stated that C.L. was subject to an order for inpatient mental health services issued under Chapter 46B (incompetency to stand trial) of the Texas Code of Criminal Procedure. He diagnosed C.L. with bipolar disorder, type 1, with psychotic features. He stated that C.L. verbally refused to take the medications voluntarily. According to Lee, C.L. lacked the capacity to make a decision regarding administration of psychoactive medications because he had poor insight into his mental illness and poor judgment. He asked the trial court to compel C.L. to take five psychoactive medications, including antidepressants, antipsychotics, mood stabilizers, anxiolytics/sedatives/hypnotics, and miscellaneous drugs.

Lee concluded that these medications were the proper course of treatment for C.L. and that, if he were treated with the medications, his prognosis would be fair. However, he said, if C.L. was not administered these medications, the consequences would be mental deterioration. Lee

considered other medical alternatives to psychoactive medications, but determined that those alternatives would not be as effective. He believed the benefits of the psychoactive medications outweighed the risks in relation to present medical treatment and C.L.'s best interest. Lee also considered less intrusive treatments likely to secure C.L.'s agreement to take psychoactive medications.

On March 13, the trial court held a hearing on the application. At the close of the evidence, the trial court granted the application. On the same date, after considering all the evidence, including the application and the expert testimony, the trial court found that the allegations in the application were true, correct, and supported by clear and convincing evidence. Further, the trial court found that treatment with the proposed medications was in C.L.'s best interest and that C.L. lacked the capacity to make a decision regarding administration of the medications. The trial court authorized the Department to administer the requested psychoactive medications to C.L. This appeal followed.

<u>SUFFICIENCY OF THE EVIDENCE</u>

In his sole issue, C.L. argues that the evidence is legally and factually insufficient to support the trial court's order to administer psychoactive medication-forensics. More specifically, C.L. contends that the State failed to prove, by clear and convincing evidence, that treatment with the proposed medications was in his best interest.

**Standard of Review**

In a legal sufficiency review where the burden of proof is clear and convincing evidence, we must look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its findings were true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the fact finder settled disputed facts in favor of its finding if a reasonable fact finder could do so and disregard all evidence that a reasonable fact finder could have disbelieved or found incredible. *Id.* This does not mean that we are required to ignore all evidence not supporting the finding because that might bias a clear and convincing analysis. *Id.*

The appropriate standard for reviewing a factual sufficiency challenge is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). In determining whether

2

the fact finder has met this standard, we consider all the evidence in the record, both that in support of and contrary to the trial court's findings. *Id.* at 27-29. Further, we must consider whether disputed evidence is such that a reasonable fact finder could not have reconciled that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. If the disputed evidence is so significant that a fact finder could not reasonably have formed a firm belief or conviction, the evidence is factually insufficient. *Id.*

**Order to Administer Psychoactive Medication**

A trial court may issue an order authorizing the administration of one or more classes of psychoactive medications to a patient who is under a court order to receive inpatient mental health services. TEX. HEALTH & SAFETY CODE ANN. § 574.106(a) (West 2017). The court may issue an order if it finds by clear and convincing evidence after the hearing that (1) the patient lacks the capacity to make a decision regarding the administration of the proposed medication, and (2) treatment with the proposed medication is in the best interest of the patient. *Id.* § 574.106(a-1). "Clear and convincing evidence" means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979). In making its findings, the trial court shall consider (1) the patient's expressed preferences regarding treatment with psychoactive medication, (2) the patient's religious beliefs, (3) the risks and benefits, from the perspective of the patient, of taking psychoactive medication, (4) the consequences to the patient if the psychoactive medication is not administered, (5) the prognosis for the patient if the patient is treated with psychoactive medication, (6) alternative, less intrusive treatments that are likely to produce the same results as treatment with psychoactive medication, and (7) less intrusive treatments likely to secure the patient's agreement to take the psychoactive medication. *Id.* § 574.106(b) (West 2017).

**Hearing on Application**

At the hearing, Satyajeet Lahiri, M.D. testified that he was not C.L.'s treating physician, but was familiar with Lee's application for an order to administer psychoactive medication—forensic to C.L. Lahiri stated that the application was filed because C.L. suffered from bipolar disorder, type 1, with psychotic features. He testified that C.L. voluntarily refused to accept the proposed medications. According to Lahiri, C.L. is "very rigid" about the medications he will take and will not allow Lee to adjust or change his medication. For example, he said, C.L. only agreed

to take a low dose of Seroquel and verbally objected to being prescribed any additional medications. Lahiri stated that C.L. informed him that he had a constitutional objection to taking the proposed medications because he believed that the medications would interfere with his thinking and that he would be unable to convey or articulate his thoughts.

Lahiri believed that C.L. lacked the capacity to make the decision about whether to accept medications because he has poor insight, does not believe that he has a mental illness, and has impaired judgment. Moreover, he said that C.L. is very argumentative and is fixated on his views. Lahiri stated that the symptoms indicating that C.L. has a mental illness include general paranoid psychosis and his belief that there was a conspiracy between government agents, the treatment team, and the court system to act against his interests and harm him. According to Lahiri, C.L. has multiple felony criminal charges pending against him relating to "sexually unlawful behavior," including human trafficking, sexual assault of a minor, and sexual performance by a minor.

Lahiri testified that he wanted to have access to certain classifications of medications to treat C.L., including antidepressants, antipsychotics, anxiolytics/sedatives/hypnotics, mood stabilizers, and miscellaneous drugs. He believed these medications were in the proper course of treatment and in C.L.'s best interest. Lahiri stated that C.L. would regain competency for trial faster if these medications are administered because C.L. is very intelligent and a "very fact-minded" person. C.L.'s prognosis was "very good." Lahiri did not believe that any of the proposed medications would interfere with C.L.'s ability to confer with his attorney and would facilitate communication with his attorney in the underlying criminal charges. The proposed medications would address C.L.'s symptoms and behaviors including his underlying psychosis, i.e., paranoid psychosis; hyperactivity; and aggressive risk. If he is not treated with these medications, C.L. will not show improvement, will not regain competency, will continue to suffer from his symptoms, will continue to exhibit bipolar manic symptoms, and will not be "dischargeable." According to Lahiri, C.L. exhibited some disruptive behavior, such as knocking "very severely" on the door while the treatment team was in a meeting, and upsetting one of the patients being interviewed so much that the other patient decompensated.

C.L. testified that when he entered the Hospital, he had not been taking any medications while in jail. He agreed that he was not in a "good mental state" when he arrived at the Hospital, but blamed it on the treatment he received in jail. C.L. stated that he was willing to take medications for the "prognostications" that were diagnosed before he was arrested, including

4

depression, anxiety, a sleeping disorder, and attention deficit hyperactivity disorder (ADHD). He believed that his ADHD diagnosis may have been confused with a bipolar diagnosis. He testified that he had been taking Wellbutrin for his depression; Seroquel; Ambien for his sleeping disorder; and clonazepam for anxiety. He was willing to take only these medications. C.L. believed it was not necessary to administer any more drugs into his body. He also admitted that he was not allergic to any other medications nor had he suffered any adverse side effects to any other medications.

According to C.L., he was admitted to the Hospital due to the "extremely exaggerated and falsified initial examination" by the district attorney's psychologist. He stated that he was competent to stand trial and that his admittance to the Hospital was a "dirty legal maneuver" to keep him entangled in the system for as long as possible. C.L. said that the recent evaluation was "crap," because he refused to accept any outcome other than a dismissal or acquittal in his criminal case. He said that the district attorney's psychologist characterized his refusal as irrational and determined him to be incompetent. Nor did he believe that taking the proposed medications would not affect him regarding the legal proceedings, stating that the dosage was "a lot" of medication.

**Analysis**

C.L. does not dispute that the evidence is legally and factually sufficient to show that he is under a court order to receive inpatient mental health services. Nor does he dispute the finding that he lacked the capacity to make a decision regarding the administration of psychoactive medications. Thus, we will consider only whether the evidence is legally and factually sufficient to support the finding that treatment with the proposed medications was in his best interest. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.106(a-1).

In the application, Lee concluded that if C.L. was treated with the proposed medications, his prognosis was fair. However, if not treated, the prognosis would be mental deterioration. According to Lahiri, C.L. will not show improvement, will not regain competency, will continue to suffer from his symptoms, will continue to exhibit bipolar manic symptoms, and will not be "dischargeable" if he is not treated with the proposed medications. The proposed medications would address C.L.'s underlying psychosis including his general paranoid psychosis, i.e., his belief that government agents, the treatment team, and the court system conspired to act against his interests and harm him; hyperactivity; and aggressive risk. Lahiri believed that C.L. would regain competency for trial faster with treatment with the proposed medications, stating that C.L. is intelligent and a "fact-minded" person. He described C.L.'s prognosis as "very good." C.L.,

5

however, does not believe he is incompetent, blaming the district attorney's psychologist for his being declared incompetent to stand trial.

Considering all the evidence in the light most favorable to the findings, we conclude a reasonable trier of fact could have formed a firm belief or conviction that treatment with the proposed medications was in C.L.'s best interest. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.106(a-1); *In re J.F.C.*, 96 S.W.3d at 266. Therefore, the evidence is legally sufficient to support the trial court's order. *See In re J.F.C.*, 96 S.W.3d at 266.

Having determined that the evidence is legally sufficient to support the finding, we now address factual sufficiency of the evidence. *See In re C.H.*, 89 S.W.3d at 27-29. At the hearing, Lahiri testified that C.L. was "very rigid" and would not allow Lee to adjust or change his medications. He said that C.L. only agreed to take a low dose of Seroquel. However, C.L. testified that he had been taking Seroquel, Ambien, clonazepam, and possibly, Wellbutrin while in the Hospital. He was willing to take only these medications. Further, he believed it was not necessary to administer any more drugs in his body and that the proposed medications might affect him in his legal proceedings. The right to refuse treatment, and the right of patients, generally, to direct the course of their treatment are important. By its very nature, however, involuntary treatment is against the stated wishes of a patient. The trial court must consider C.L.'s preferences and beliefs, but need not simply defer to them. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.106(b). It is presumed that the trial court gave C.L.'s preferences and beliefs due consideration. The basic thrust of Lahiri's testimony, that C.L.'s mental illness precluded his consideration of taking psychoactive medication, was unrebutted. Furthermore, C.L. did not allude to any side effects or religious objections to taking these medications.

Based upon our review of the record as a whole, we conclude that the conflicting evidence is not so significant that a reasonable trier of fact could not have reconciled the evidence in favor of its finding. *See in re J.F.C.*, 96 S.W.3d at 266. Accordingly, the trial court could have formed a firm belief or conviction that the proposed medications were in C.L.'s best interest. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.106(a-1), (b); *see also In re C.H.*, 89 S.W.3d at 25. Therefore, the evidence is factually sufficient to support the trial court's order. We overrule C.L.'s sole issue.

## DISPOSITION

Having overruled C.L.'s sole issue, we *affirm* the trial court's judgment.

**BRIAN HOYLE**
Justice

Opinion delivered November 14, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**NOVEMBER 14, 2018**

**NO. 12-18-00056-CV**

**THE STATE OF TEXAS FOR THE BEST
INTEREST AND PROTECTION OF C.L.**

Appeal from the County Court at Law
of Cherokee County, Texas (Tr.Ct.No. 42328)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*